## AMERICAN ADAMITE CO. v. MESTA MACH. CO.

(District Court, W. D. Pennsylvania. December 9, 1925.)

No. 927.

1. Patents ⊙⇒328—No. 1,071,364, claim 1, for alloy of iron, held not infringed.

Speer and Forster patent, No. 1,071,364, claim 1, for an alloy of iron, *held* not infringed.

2. Patents ⊙⇒312(1)—Plaintiff in infringement suit has burden of proof.

In patent infringement suit, plaintiff has burden of proof on question of infringement.

In Equity. Patent infringement suit by the American Adamite Company against the Mesta Machine Company. Decree for defendant.

Decree affirmed 18 F.(2d) 538.

Winter, Brown & Critchlow, of Pittsburgh, Pa., for plaintiff.

Bakewell, Byrnes & Stebbins, of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. [1] The plaintiff, owner by assignment of patent, No. 1,071,364, charges the defendant, Mesta Machine Company, with infringement of claim 1 of said patent, issued August 26, 1913, to James Ramsey Speer and William R. Forster, assignors of the plaintiff. The title of the patent is an "alloy of iron"; the

17 F.(2d)—60

claim and issue being for "a new article of manufacture," an "alloy of iron" containing certain elements. Claim 1 reads as follows: "We claim—1. As a new article of manufacture, an alloy comprising essentially silicon .10 per cent. to 2.00 per cent.; chromium .5 per cent. to 1.50 per cent.; nickel .25 per cent. to 1.00 per cent.; sulfur, not exceeding .05 per cent.; phosphorus, not exceeding .12 per cent.; manganese, not exceeding .45 per cent.; total carbon 1.25 per cent. to 3.50 per cent.; and iron approximately sufficient to complete the 100 per cent."

The product is designated "Adamite." This patent was before the Circuit Court of Appeals in the case of Pittsburgh Iron & Steel Foundries Co. v. Seaman-Sleeth Co., reported in 248 F. p. 705. In that case the patent was held valid, but not infringed, in an opinion on both questions which is so comprehensive and clear as to furnish a safe guide for the determination of this case.

On the question of invention, the court found from the prior art, as shown in the evidence, formulæ, and analyses of many iron and steel products, which were either within the analyses of the patent or as close to it as the analyses of defendant's products, upon which plaintiff based its charge of infringement, the court citing in its opinon various patents of this character. The validity of the patent was sustained, the court holding that there is a new material, a new article of commerce, known as "Adamite," having certain peculiar and striking physical characteristics specified in the patent, and which distinguish it from the prior art; that its base is iron, but the metal, while possessing characteristics of both iron and steel, is neither iron nor steel; that it resembles cast iron in lacking the quality of elongation, in its resistance to abrasion, and in its high carbon content; while it resembles steel in its tensile strength, toughness, capacity to be worked or forged, and in the form of its carbon content; that it was claimed for the product that its chemical characteristics more nearly approached iron, with physical properties equal to, if not excelling, the highest grades of steel. The court held that the validity of the patent depended upon the plaintiff's ability to establish two facts: First, that "Adamite" is a new metal; and, second, that the formula of the claim will produce that product. That the first is a basic fact, because the formula of the claim, both as to ingredients and proportions, is not altogether new.

Touching the chemistry of the patent, the court held that its central characteristic is

its carbon content, both in quantity and form; that in quantity it lies well within the range of cast iron, but in form it is that of steel. The product "Adamite," the court further held, has the quality of intense hardness and toughness (steel characteristics), coupled with an extraordinary ability to withstand abrasion, especially, under heat (cast-iron characteristics); that these are procured without the use, in large quantities, of the expensive ingredients, chromium and nickel, by depending primarily upon high carbon, the cheapest hardening element, and using it in excess of what was considered permissible in a product having steel characteristics. The court having found the patent valid, covering a new metal with the peculiar physical properties above designated, held that, since the defendant's material in that case did not have these peculiar physical properties, it did not infringe. The court also held that, as metallurgy is not an exact science, any use of the patent formula within the wide range of each element will not necessarily produce Adamite, as otherwise the patent would be anticipated in the prior art; that Adamite is produced only when one skilled in the art follows the formula with a proper regard to the correlation of its several elements; that a person may pursue the formula and not get Adamite, in which case there is no infringement; or he may pursue the formula and get Adamite, in which case infringement will result. On the issue of infringement, the court held that the principal question is, not whether the defendant's product was of the analyses of the patent, but whether the defendant's product was the product of the patent; namely, Adamite. It was also held that the fact that the defendant's formula was the equivalent of that of the patent is without force on the question of infringement, unless it is accompanied with evidence that Adamite is the product of such equivalent; that, if the product was something else, whether as good or not so good, it did not infringe, even if the formulæ used were the equivalent of that of the patent.

By the principles thus so clearly enunciated by the Appellate Court concerning the patent here in suit it ought not to be difficult to decide the issue involved in this case.

I will not stop to discuss with any particularity the voluminous evidence contained in this record on the matters in issue, being content rather to state the conclusions which the clear weight of the evidence seems fully to justify.

The three distinct physical characteristics of Adamite which the patent points out, and which distinguish it from steel, are: (a) It resembles cast iron in its action under cutting tools in the lathe; (b) under the acetylene torch; and (c) in its failure to show elasticity, or elongation, or reduction of area, over ordinary cast iron.

If the defendant's material, known as "Mesta Special" fails to respond to the test which the patent itself has prescribed, it clearly is not the patented material, and no infringement would exist.

The testimony taken as a whole does not establish that "Mesta Special" material resembles cast iron in its action under cutting tools in the lathe. On the contrary, the evidence seems to establish that, in the "Mesta Special," under the tool, the chips curl up like steel, while in an Adamite roll the chips break like turning iron or a chilled roll, while in Adamite the chips crumble more, and the difference exists in the cutting, both by the appearance of the roll and the action of cutting; that Adamite apparently is from an iron base, while Mesta's tendency is towards steel, as observed in the turning operation. Again, the open tests which were made in the presence of the court and counsel clearly established that the "Mesta Special" material does not resemble cast iron in its action under the acetylene torch. In this test three cylindrical pieces, about 14 inches in diameter, of cast plain carbon steel, "Mesta Special" material, and cast iron, under the same conditions, were subjected to the foregoing test. The plain carbon steel and the "Mesta Special" material were cut through in approximately the same time; the character of the cuts being substantially the same. The "Mesta" and steel cut entirely different from cast iron. The latter was subjected to the torch for a longer period than either of the others, and was only cut from one-fourth to one-third through, showing a very wide and ragged cut.

Again, the patent claims for "Adamite" that "in its primary or cast state it resembles cast iron in its failure to show elasticity, or elongation, or reduction of area, over ordinary cast iron," and that a forged piece of "Adamite" was tested "without any change in area, elongation, or elastic limit other than would be observed in cast iron."

The open tests made by the defendant in the presence of court and counsel on the subject of elongation, change of area, and elasticity showed that the "Mesta" material cast into both rolls and slabs, and both forged and unforged, had substantial amounts of elongation and reduction in area. The de-

fendant went beyond this, introducing the analyses of a very large number of heats of its special materials with the results of all its physical tests on such material, and which showed that the "Mesta Special" material, throughout its entire carbon range always showed elongation and reduction of area.

The defendant exhibited sheets containing tables showing the results of over 300 tests as to elongation and reduction of area of the "Mesta Special" product; the test being made in the regular commercial way to determine if the product was being kept up to the proper standard. These tables show that in the lower carbon ranges the "Mesta Special" material has a very considerable elongation, which gradually decreases as the carbon content increases, approaching zero at 2 per cent., which appears to be the generally accepted dividing line between steel and cast iron. The tables also show that throughout the entire range of material, the principles of the alloying metals and metalloids, such as chromium, nickel, manganese, and silicon, remain the same; the only variation being in the carbon, which is increased or decreased to make the alloy steel harder or softer. The elongation gradually decreases as the carbon content increases, as would be expected in any chrome nickel steel. From these tests the conclusion follows that the difference between the various grades of "Mesta Special" material is one of degree only between the soft, medium, and harder grades. Elongation and reduction in area, the distinguishing steel characteristics, persist throughout the entire range of defendant's material. As a further proof that the "Mesta Special" material is steel, and has the physical properties of steel, and not of cast iron, certain test pieces were taken from cast slabs, which were put through the same process of treatment as the "Mesta Special" products. These test pieces were first machined into square bars, and then subjected to the bending process at ordinary room temperature. Instead of breaking off as cast iron would have done, the test pieces bent like steel. The same steel characteristics, ductility, which permits the "Mesta" material to be elongated and reduced in area on a tensile test, results in deforming it in the bending test. It appears to be agreed that the carbon content in steels extends upward to the neighborhood of 2 per cent. Chrome nickel steels having the proportions of chrome nickel of the patent were old in the prior art, but the product "Adamite" was held to be patentable over them because of its cast-iron characteristics. Physical and chemical characteristics of "Mesta Special" material are those of steel. These remain the same in kind, changing only in degree throughout the entire range of defendant's rolls, through the soft, medium, and hard. The evidence seems to establish that the difference between cast iron and steel is not chemical, but physical. Cast iron may have practically the same chemical properties as steel, but their physical properties are strikingly different. Steel can be forged and fabricated while hot, while cast iron cannot. Steel has ductility, can be stretched, what is called elongation, can be reduced in section, what is called reduction in area. Cast iron usually does not possess these properties at all, or, if at all, only in a very limited degree. The testimony also establishes that the two metals, "Adamite" and "Mesta Special" are readily distinguishable as to physical characteristics by their operation in the mills. The "Mesta Special" rolls have the characteristics of steel rolls as to strength, elasticity, or ability to meet shocks, as to the texture of the surface, and as to turning of the rolls in the lathe.

These "Mesta Special" rolls are used chiefly where steel rolls have been formerly used. They do not appear to invade the field of sand iron or chilled rolls, where an extremely hard wearing surface is required. For finishing, chilled iron rolls, where strength can be sacrificed for hardness, are generally used.

As this is a patent for a product of manufacture, the proper comparison is between the characteristics of defendant's product as sold and used and the characteristics of plaintiff's product as set forth in the patent. The Appellate Court, in the Seaman-Sleeth Case, held that there was a new material, "Adamite," with certain peculiar physical characteristics which differentiated it from the prior art. It is clear that the plaintiff cannot ignore the limitations as to physical characteristics set forth in the patent and imposed upon it by the Circuit Court of Appeals, and base its charge of infringement upon the broad chemical formula of claim 1. This for the reasons so admirably stated by the Appellate Court in its opinion.

[2] In view of these limitations, I deem it unnecessary to elaborate on the chemical differences between the two products. Any one following the teachings of the patent to get the physical characteristics of the product would surely follow the teachings of the five examples of the chemical formula of "Adamite," which the patent sets forth. He would most certainly study the specific cas-

es therein given. In the Seaman-Sleeth Case the plaintiff based its case upon the specific examples to support the patent. In these specific examples the general range of the carbon is from 2 to 3 per cent., which is within the general cast-iron carbon range, As the Appellate Court said in its opinion, "[Adamite] resembles cast iron * * * in its high carbon content," and, as to the carbon content, "In quantity it lies well within the range of cast iron, but in form, it is that of steel." One of the striking features of "Mesta Special" product, as contrasted with the teachings of the patent, is its carbon content, which is entirely within the steel range, and not "within the range of cast iron." It would appear that the defendant here has even greater chemical differences between its "Mesta Special" alloy and "Adamite" than were present in the Seaman-Sleeth Case. Its carbon range is well within the steel range, and not within that of cast iron, as required by the patent. Silicon is maintained constant for all carbons, contrary to the teaching of the patent. The amount of nickel used is nearly twice that called for by the patent, while manganese is even outside of the limits of the claim in suit. When we take into consideration the well-recognized effects of these elements, the difference in physical characteristics of the two products may be readily accounted for in the different chemical compositions of the two materials. Keeping in mind the teachings of the patent and its limitations so clearly defined by the Circuit Court of Appeals, while fully recognizing the validity of the patent within its proper field, I am unable to find that defendant's product is "Adamite." The burden of proof on the question of infringement is upon the plaintiff, and, in the court's view, it has failed to sustain the burden. The bill is therefore dismissed, at the plaintiff's cost.

A decree may be drawn accordingly.