### AMERICAN ADAMITE CO. v. MESTA MACHINE CO.

(Circuit Court of Appeals, Third Circuit. April 6, 1927.)

No. 3487.

Patents ☞328—1,071,364, for alloy of iron, held valid, but not infringed.

Speer and Forster patent, No. 1,071,364, for an alloy of iron, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Patent infringement suit by the American Adamite Company against the Mesta Machine Company. Decree of dismissal (17 F. [2d] 945), and complainant appeals. Affirmed.

Frederick P. Fish, of Boston, Mass., H. V. Blaxter, of Pittsburgh, Pa., and J. Lewis Stackpole, of Boston, Mass., for appellant.

Byrnes, Stebbins & Parmelee, of Pittsburgh, Pa. (George E. Stebbins and Clarence P. Byrnes, both of Pittsburgh, Pa., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. The complainant appeals from a decree dismissing its bill for infringement of Letters Patent No. 1,071,364, issued August 26, 1913, to James Ramsey Speer and William L. Forster for an alloy of iron. Of the patent's two claims, only the first is in suit. This court has held that claim valid. The District Court based its decree on a finding of non-infringement.

To avoid repeating what the courts have already said and decided in respect to the character of the patented product and the scope of the patent claim, reference is made to the litigious history of the invention found in the following decisions: Pittsburgh Iron & Steel Foundries Co. v. Seaman-Sleeth Co. (D. C.) 236 F. 756; Id., 248 F. 705 (C. C. A. 3d); American Adamite Co. v. Mesta Machine Co. (D. C.) 17 F.(2d) 945. Indeed, were it not for a broadening of the claim insisted upon by the complainant and a narrowing of the claim which the respondent mistakenly asserts this court gave it in the Seaman-Sleeth Case, we should be content with the entirely correct interpretation of our decision by the learned trial judge and adopt his opinion as our own.

Claim 1 of the patent is for,

"As a new article of manufacture, an alloy comprising essentially silicon .10% to 2.00%; chromium .5% to 1.50%; nickel .25% to 1.00%; sulphur, not exceeding .05%; phosphorus, not exceeding .12%; manganese, not exceeding .45%; total carbon 1.25% to 3.50%; and iron approximately sufficient to complete the 100%."

If this were all the inventors had to say on the subject, the claim would be invalid because anticipated, for, concededly, many metallurgical products had long before been made from the same chemical elements within the named ranges. But the inventors, in order to show that their invention, though produced from an old chemical formula, is "a *new* article of manufacture," first gave it a new name —Adamite—and then set forth its novel characteristics in the specification, adequately and explicitly. Of these the chief chemical characteristic is high carbon in combined form, that is, carbon in union with some one or more metallic constituents of the iron alloy, for instance, iron carbide or the double carbide of iron and chromium. This was old, and it is worthy of note only because of its presence in a product having the physical characteristics of Adamite. Of these the principal one is a dual resemblance to steel and cast iron—an alloy having in combination steel-like strength and iron-like resistance to abrasion under heat—something of a paradox in metallurgy. This we thought in the Seaman-Sleeth Case, and still think, is new and meritorious.

Continuing, the inventors pointed out that this product contains other physical characteristics. They said:

"We do not deem it proper to designate our alloy 'Adamite,' as either iron or steel, as those words are commonly known to the trade; we believe we have made a discovery of a new composition of metals, which, in its primary or cast state, resembles cast iron in its action under cutting tools in the lathe, under the acetylene torch, and in its failure to show elasticity or elongation or reduction of area over ordinary cast iron, whereas in its secondary or worked state its ultimate strength, its forging and wearing qualities class it with a steel product."

As to its wearing qualities, the complainant claims that when made into rolls for use in steel rolling mills—its chief field—it has more than twice the life of ordinary rolls and has largely displaced both iron and steel rolls in varied uses.

Because of the importance of this invention and of the great industry in which it has taken a place, this court (with a changed personnel in that two of the judges did not sit before) has considered fully and afresh all matters presented in what is practically a reargument of the Seaman-Sleeth Case. We have discovered no reason for retracting or weakening anything the court there said. Now, as before, this court is of opinion that the product of the patent is a new alloy of iron, that it involves invention, that the claim in suit is valid, and that anyone who makes Adamite from its formula and within the ranges of its elements infringes. The trouble is to discover when a product is Adamite. This is a difficulty inherent in the product and in its source, and it was so recognized by the patentees. We think the only way a court can discover Adamite is by following the way the patentees themselves described it. Matheson v. Campbell, 78 F. 910, 917, 918 (C. C. A. 2d). And of the same opinion is the complainant—down to a certain point. It says the dominant characteristics of the product are its strength of steel and resistance to abrasion under heat and its iron-like durability. It stops there, however, and maintains that the other named characteristics are unessential, trivial and inconsequential. For mill purposes that may be true, but for the purpose of identifying the product they are real and very useful. Evidently the patentees were of this opinion for they made no distinction between "dominant" characteristics and "unessential" characteristics, but gave the art all the characteristics by which it could identify the product. As metallurgy is not an exact science, it is possible that these identifying characteristics of Adamite may be present in varying degrees and the product still be Adamite. Yet their absence cannot be ignored. When, as here, an important group of identifying characteristics, imposed upon the product by the patent, is absent, one asserting the patent cannot limit himself to what he claims to be, and what, in truth, may be, the dominant characteristics of the invention and prevail on proof of them alone. Some one else, conceivably, might invent a product with these characteristics and no others, and differentiate his invention from that of the patentees by that very difference. We are driven to this judgment because the field in which Adamite has taken a place is old; it has been long and thoroughly worked; and the owner of the patent is entitled only to the new thing the patentees developed there and to no other thing, old or new, which may be found there.

On the issue of infringement we find ourselves in accord with, and subscribe to the rea-

soning of, the learned trial judge in his finding that the complainant has not sustained the burden of proving the tort of infringement as imposed by the terms of the patent, and also in his finding that the alleged infringing product of the defendant, as shown by its physical characteristics and behavior in operation, is not Adamite. The defendant says, and we think it has proved, that its product, though made from a formula practically that of the patent, is a nickel-chrome-steel close to, yet within, the highest range of combined carbon in steel. Its physical characteristics are those of steel; its only resemblance to Adamite is its long life when made into rolls and used in a certain kind of rolling mill work.

Counsel for the defendant (doubtless through zeal of advocacy) made a clear mistake in their reading of our opinion in the Seaman-Sleeth Case when they attributed to this court a finding that: "Claim 1 is too broad; that in its upper and lower carbon ranges it enters cast iron on the one hand (higher range) and steel on the other hand (lower range), and said, "Hence it is certain that some products within the broad range of the analysis of the patent will not be Adamite." 248 F. 712. Counsel here committed the error of breaking the sentence and omitting its concluding words, which we shall italicize in our quotation of the paragraph. Certainly we had no intention to impose such a limitation on the claim and actually we think we did nothing of the kind. In discussing the formula within which everyone has conceded alloys of various kinds can be obtained, among them alloys which are Adamite, having the dual characteristics of steel and cast iron, and alloys which are not Adamite, having either steel or cast iron characteristics singly, we said:

"The range of analysis, however, is broad and uncertain, with corresponding uncertainties in the resultant product. Within a given range, plaintiff's expert testified that he would 'expect' 'approximately' the product of Adamite, but it was also testified that within the lower and upper ranges of the claim, the lines of demarcation between Adamite and steel on the one hand and between Adamite and cast iron on the other, are hard to determine, because in one range the metal 'shades off' into steel and in the other it 'shades off' into cast iron. Hence it is certain that some products within the broad range of the analysis of the patent will not be Adamite; *while others may be Adamite not with fixed but with many variations of characteristics.*"

If it is necessary to elucidate this statement we will say, that the claim of the patent is not for a chemical formula; it is for a product obtained from a formula within broad ranges. Obviously, the probability or expectation of obtaining Adamite as the ranges of the elements shade off in their upper and lower limits is reduced; but, wholly aside from probabilities and expectations, when Adamite is obtained anywhere between the top and bottom limits, it is covered by the claim of the patent and will be protected by the courts.

In this connection, it may not be amiss to observe that this court has a double duty to perform; one, to preserve the invention of Adamite to the patentees (or their assignees); the other, to preserve to the art the right to enter the ranges of the patent for the purpose of making something other than Adamite— two classes of persons who have equal rights to enter the same field of metallurgy; the one to search for and find Adamite, and the other to find and carry away anything else. But others hunting for something else should tread warily, for if they should pick up and carry away what may prove to be Adamite with the characteristics which the inventors have attributed to it, they will receive little protection from a defense of "twilight zones" and "shading off" ranges when charged with infringement. Adamite is a fact. Though difficult to prove, as we have seen, it is not a difficulty that is insuperable.

The decree of the District Court is affirmed.